IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JESSY NAPPER,

    Petitioner,

v.                                                              No. 1:16-cv-01023-JDB-egb

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING MOTIONS,
DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Pursuant to 28 U.S.C. § 2255, Petitioner, Jessy Napper, has filed a *pro se* motion to vacate, set aside, or correct his sentence (Docket Entry ("D.E.") 1), and a supplemental motion asserting additional claims (D.E. 10) (collectively the "Amended Petition"). For the reasons that follow, the Amended Petition is DENIED.[1]

BACKGROUND

In 2009, a federal grand jury sitting in the Western District of Tennessee returned a seventeen-count indictment, and later a superseding indictment, charging Napper and others with federal drug crimes (the "Memphis case"). (*United States v. Napper*, No. 2:09-cr-20123-SHM-cgc-5 (W.D. Tenn.), D.E. 2; *id.*, D.E. 92.) As to Napper specifically, he was charged with conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21

---

[1] Petitioner's "Motion for Response" (D.E. 13) and request for an order on his amended petition, styled as a "Motion for Writ of Mandamus" (D.E. 16), are DENIED as moot.

U.S.C. § 846, and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (*Id.*, D.E. 92 at PageID 208, 219.) He pleaded guilty to the distribution count (*id.*, D.E. 573), and was determined to be subject to an enhanced sentence as a career offender under § 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). (*Id.*, Presentence Report at ¶ 23.) The enhancement was based on two prior drug convictions occurring in 2000 and 2001, respectively, for violation of Tenn. Code Ann. § 39-17-417. (*Id.*, Presentence Report at ¶¶ 36, 38.)

In November and December of 2011, while he was out on bond in the Memphis case, Napper committed additional federal drug offenses which resulted in the filing, on January 22, 2013, of another federal indictment.[2] (*United States v. Napper*, No. 1:13-cr-10008-JDB-1, D.E. 2 at PageID 6–8; *id.*, D.E. 156 at PageID 408.) He was charged with one count of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base (Count 1), in violation of 21 U.S.C. §§ 841(a)(1), 846, and two counts of "aiding and abetting . . . [the] possess[ion] with the intent to distribute, distribute, and attempt to distribute" cocaine base (Count 2) and cocaine (Count 3), in violation of 21 U.S.C. §§ 812, 841(a)(1), and 18 U.S.C. § 2. (*Id.*, D.E. 2 at PageID 6–10.) He subsequently pleaded guilty to all three counts. (*Id.*, D.E. 114.)

The Defendant was again determined to be subject to an enhanced sentence as a career offender based on his 2000 and 2001 Tennessee drug convictions, as well as a 2011 conviction under Tennessee law for possession with intent to deliver over .5 grams of cocaine. (PSR at ¶¶

---

[2] In the Court's discussion of the 2013 federal case, No. 1:13-cr-10008-JDB-1, Petitioner is referred to as the "Defendant," and all references to the Guidelines are to those in effect on the date of his sentencing. *See* United States Sentencing Commission, *Guidelines Manual* (eff. Nov. 1, 2013).

37, 41, 44.) "Based upon a total offense level of 29 and a criminal history category of VI, the guideline imprisonment range" was calculated to be 151–188 months. (*Id.* at ¶ 81 (emphasis omitted).) The Court "granted a downward variance of 16 months to account for the time Napper had already served in the [Memphis] case, resulting in a 135-month sentence." (*Id.*, D.E. 162 at PageID 459.) A three-year period of supervised release was also imposed. (*Id.*, D.E. 148).

The Defendant appealed his sentence, arguing that his below-Guidelines sentence was substantively unreasonable in light of, among other things, the Government's delay in indicting him. (*Id.*, D.E. 162 at PageID 460.) The Sixth Circuit affirmed the sentence, finding that, "[h]aving taken into account the supporting evidence and Napper's circumstances, the judge fulfilled his sentencing requirements." (*Id.*, D.E. 162 at PageID 460.)

The inmate now seeks relief from his 135-month sentence, asserting the following:

1. He no longer qualifies as a career offender in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016).

2. Defense counsel rendered ineffective assistance by failing to advise him about his career offender status, challenge his career offender status, review the PSR with him, argue at sentencing that he was a single parent, and object to the drug quantities reported in the PSR.

3. The Government intentionally delayed filing the indictment "in order to enhance the sentence under" the career offender provision.

(D.E. 1 at PageID 4–5; D.E. 10 at PageID 28; D.E. 12 at PageID 57.)

DISCUSSION

The Government filed a response (the "Response") to the Amended Petition, arguing that all of the claims are without merit. (D.E. 11.) The Response is accompanied by defense counsel's affidavit, as well as copies of letters he sent to Napper during the time he represented him. (D.E.

3

11-1; D.E. 11-2; D.E. 11-3.) The inmate filed a reply (the "Reply") addressing some of the issues raised by the Government. (D.E. 12.) Upon review of the parties' arguments, as well as the record in this case and the underlying criminal case, the Court determines that some of the claims are waived, and all are without merit.[3]

A prisoner seeking to vacate his sentence under § 2255 must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and quotation marks omitted). The petitioner has the burden of proving by a preponderance of the evidence that he is entitled to relief. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

I.  Career Offender Status

In the Amended Petition, the inmate insists that "[o]ne of the predicate offenses used to enhance" his sentence "was [a] Texas prior for the delivery or transportation of a controlled substance," which, he contends, no longer qualifies as a controlled substance offense under the Guidelines's career offender provision in light of *Mathis*, 136 S. Ct. at 2551, and *Hinkle*, 832 F.3d at 576–77. (D.E. 10 at PageID 28.) In his Reply, however, he abandons this claim, acknowledging that he does not have a prior conviction under Texas law. (D.E. 12 at PageID 54.) He nevertheless

---

[3] A § 2255 petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing is not necessary in the instant case because the allegations underlying the claims "are [either] contradicted by the record . . . or [are] conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

4

persists, and shifts his *Mathis* and *Hinkle* argument to his prior Tennessee drug convictions under Tennessee Code Ann. § 39-17-417. (D.E. 12 at PageID 54.)

The effort is unavailing for two reasons. First, Petitioner has forfeited the new argument by presenting it for the first time in his Reply. *See United States v. Pineda-Parada*, No. 5:13-cv-07309-JMH-HAI, 2014 WL 7405700, at *4 (E.D. Ky. Dec. 30, 2014) ("Because [the petitioner's] arguments were first raised in his reply brief, they are waived.") (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)).

Second, even if the claim were properly before the Court, it is without merit. Under U.S.S.G. § 4B1.1, a defendant is a career offender if, among other things, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" is defined as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

To determine if a conviction constitutes a controlled substance offense, a court must "apply a 'categorical' approach," which focuses on the statute under which the petitioner was convicted, rather than the petitioner's conduct. *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Taylor v. United States,* 495 U.S. 575, 600 (1990)); *see also United States v. Havis*, 907 F.3d 439, 441–42 (6th Cir. 2018) (applying categorical approach in determining whether defendant's Tennessee conviction for delivering cocaine was a "controlled substance offense" under the Guidelines). If the statute is "divisible," meaning it describes multiple offenses, the

5

court may "employ the 'modified categorical approach.'" *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). That approach permits the examination of "a limited class of documents" from the defendant's prior criminal case in order "to determine which alternative formed the basis of the defendant's . . . conviction." *Id.* (quoting *Descamps*, 570 U.S. at 257). The Supreme Court in *Mathis* clarified that a statute is divisible if it lists alternative elements, not alternative means of satisfying one or more elements. *Mathis*, 136 S. Ct. at 2249. If the statute lists alternative means, then it is "indivisible," and resort to the limited class of documents is prohibited. *Id.* at 2448.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches § 4B1.2(b)'s definition of a 'controlled substance offense.'" *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir. May 31, 2018); *see also Havis*, 907 F.3d at 441 ("Thus, our job is to match up the elements of Tennessee drug delivery with those of a 'controlled substance offense' under the Guidelines and see if Tennessee criminalizes a broader range of conduct."). If the elements do not match, the prior conviction cannot be counted toward the defendant's career offender status. *Mathis*, 136 S. Ct. at 2247 (A "prior crime qualifies as a[] . . . predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense.")

Applying this methodology, the Fifth Circuit in *Hinkle* determined that the defendant's conviction under Texas law for the knowing delivery of heroin did not qualify as a controlled substance offense under the Guidelines' career offender provision. *Hinkle*, 832 F.3d at 576–77. The court found that the statute's definition of "delivery," which included "offering to sell,"

"criminalizes a 'greater swath of conduct than the elements of the relevant [Guidelines] offense.'" *Id.* at 572, 576 (alteration in original) (quoting *Mathis*, 136 S. Ct. at 2251).

Petitioner's argument that *Mathis* and *Hinkle* disqualify his Tennessee drug convictions as career offender predicates suffers from a lack of development. The Tennessee statute provides that "[i]t is an offense for a defendant to knowingly . . . [m]anufacture a controlled substance[,] [d]eliver a controlled substance[,] [s]ell a controlled substance; or . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a). Although Napper insists that the statute "encompasses conduct that would constitute a controlled substance offense, <u>plus conduct that would not</u>" (D.E. 12 at PageID 56 (emphasis in original)), he does not explain which elements of the statute are purportedly broader than the federal definition. He also does not identify any relevant similarities between the Tennessee statute and the Texas statute in *Hinkle*.

The argument is unavailing for an additional reason. In a recent decision, the Sixth Circuit reaffirmed that "post-*Mathis*, . . . violations of Tennessee Code Annotated § 39-17-417 . . . count as predicate offenses under the guidelines." *Shropshire v. Quintana*, No. 17-6164, 2018 WL 4908140, at *2 (6th Cir. July 17, 2018) (unpublished) (citing *United States v. Merriweather*, 728 F. App'x 498, 523–24 (6th Cir. 2018); *United States v. Alexander*, 686 F. App'x 326, 327–28 (6th Cir. 2017) (per curiam)).

Accordingly, the claim is DISMISSED as having been waived, and is otherwise without merit.

**II.** Ineffective Assistance of Counsel

Petitioner asserts that his trial attorney rendered ineffective assistance by failing to (1) advise him about his career offender status, thus causing him to reject the Government's plea offer; (2) review the PSR with him prior to sentencing; (3) argue at sentencing that he was a single parent; and (4) object to the drug quantities reported in the PSR. Relying on counsel's affidavit and copies of letters he sent to Napper, Respondent argues that counsel did not provide ineffective assistance in any of the ways alleged. In his Reply, the inmate advances the additional argument that his attorney should have argued to the Court that his Tennessee drug convictions are no longer predicate offenses for purposes of the career offender provision.

A. Legal Standards

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the

8

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

   B. Career Offender Status

Napper's claim that his attorney failed to advise him that he qualified as a career offender, and that the failure resulted in his rejecting the Government's plea offer, is without merit. In his affidavit, defense counsel avers that, in a letter to his client dated October 25, 2013, he provided a status of the case and reiterated that Napper faced a sentence as a career offender. (D.E. 11-1 at PageID 45.) The letter, a copy of which is attached to the affidavit, states:

> As you know, we discussed a number of times the fact that you are a Career Offender and how that would impact your case. Additionally, we discussed, and you rejected, an offer from the United States to settle this case for a 72 month sentence with credit for the time beginning when you were indicted by the Grand Jury in this case with the balance to run consecutively to your current sentence. In the tape recorded conversation, you mention that you are waiting to see if the United States will come to you with a better offer because "it will cost them $100,000" to try the case and "they don't want to spend the money." Unfortunately, your assumption is completely off the mark. There will be no further offers and the United States is preparing for trial.

(D.E. 11-3 at PageID 48.) The letter also provides a chart of the Defendant's predicate offenses, which is prefaced by counsel's statement that this "information makes it very clear that you should plead guilty and accept the offer made by the United States in this case because it is a sentence WELL BELOW the advisory guidelines." (*Id.* at PageID 49 (emphasis in original).) The letter further reiterates that "[b]ecause you have 4 prior drug felonies, you are considered a Career Offender under § 4B.1. of the Sentencing Guidelines. . . . Indeed, you were a Career Offender in your previous Federal case." (*Id.* at PageID 51.)

The record thus contradicts Petitioner's allegations that he received no career offender advice, and that, had he received such advice, he would not have rejected the plea offer. As he has

9

not alleged that he did not receive the letter, or identified or introduced any other evidence to contradict the evidence supplied by the Government, he cannot prevail on his claim.

The argument advanced for the first time in the Reply also cannot provide relief to the inmate. Most obviously, it is waived and thus not properly before the Court. In addition, it is without merit as the Court has already held that Petitioner's Tennessee drug convictions qualify as career offender predicates. Thus, the inmate suffered no prejudice by counsel's failure to challenge his classification as a career offender.

C. Drug Quantities

Petitioner asserts that his attorney provided ineffective assistance by failing to object that the drug quantities listed in the PSR were overstated. The Court finds, as Respondent has argued, that Napper has not established deficient performance by his attorney, nor can he show that he was prejudiced.

Napper's assertion of deficient performance regarding the drug quantities fails for the simple reason that he has provided no support for the underlying allegation that the quantities were incorrect. The PSR listed the drug quantities as 49.5 grams of cocaine, equivalent to 9.9 kilograms of marijuana, and 3.5 grams of cocaine base, equivalent to 12.4985 kilograms of marijuana. (PSR at ¶ 15.) The total drug quantity thus equated to 22.3985 kilograms of marijuana. (*Id.*) In his affidavit, counsel avers that his "review of the discovery illustrated that, in fact, the drug quantities were correctly calculated." (D.E. 11-1 at PageID 45.) Petitioner has not explained why, or by how much, he believes the reported drug quantities were overstated.

But even if counsel performed deficiently, there is no resulting prejudice. As counsel points out in his affidavit, "the drug amounts attributable to Mr. Napper amounted to a level 18

under the advisory guidelines," but the advisory "range was driven by his [career offender] status." (D.E. 11-1 at PageID 45.) *See* U.S.S.G. § 2D1.1 (providing an offense level of 18 where the drug quantities involved at least 20, but not more than 40, kilograms equivalent of marijuana); U.S.S.G. § 4B1.1 (setting offense level of 32 for career offenders).

   D. Presentence Report

Petitioner asserts that his attorney "failed to review the PSR with" him, which "resulted in a higher sentence." (D.E. 1 at PageID 4.) He maintains that he would have received a shorter sentence had "meaningful objections to the PSR" been made. (*Id.*) Respondent argues that the claim is without merit because it is contradicted by the record. The Court agrees.

At the sentencing hearing, the Defendant told this Court, under oath, that he had received a copy of his PSR, which he reviewed with his attorney. (No. 13-cr-10008-JDB-1, D.E. 156 at PageID 427.) In his affidavit, defense counsel confirms that he "received Mr. Napper's PSR on or about January 10, 2014," and "subsequently mailed a copy of [it] to [him] on January 14, 2014." (D.E. 11-1 at PageID 44.) The letter, a copy of which is attached to counsel's affidavit, states in its entirety:

> Enclosed is a copy of the presentence investigation report which I received from the probation officer assigned to your case. Please read over this report carefully. I will be out to see you as soon as possible to go over the report with you. I will then file any objections to the report, if necessary.

(D.E. 11-2 at PageID 47.) Counsel further avers that he "met with Mr. Napper at the Madison County Jail on February 21, 2014 for the specific purpose of reviewing the PSR with him and to discuss all of his concerns and any objections he wished to raise to the PSR." (D.E. 11-1 at PageID 45.) He states that he "raised" and "vigorously advocated" all issues that his client "asked [him] to raise." (*Id.* at PageID 46.)

11

Petitioner has not offered a reason why this Court should disregard his sworn testimony that he received the PSR and reviewed it with his attorney. Nor has he identified any evidence which would undermine counsel's averments or the documents attached to counsel's affidavit. As his central allegation about counsel's conduct is belied by the record, Petitioner has failed to establish deficient performance.

Even assuming, however, that counsel failed to review the PSR with his client, the inmate has not demonstrated that he was prejudiced. Specifically, he does not explain what objections he would have made to the PSR, or show how the unidentified inaccuracies would have affected his sentence. To the extent he means to reiterate his point that the PSR misreported the drug quantities, the Court has already found that he has not established an error in the amounts listed. Thus, his bald allegation that there were "meaningful objections" he could have lodged against the PSR is unsupported.

E. Single-Parent Status

Petitioner claims that his attorney performed deficiently by failing to advise the Court at sentencing that he is "the only surviving parent" of his young daughter. (D.E. 1 at PageID 4.) He argues that, "had [this information] been shared with the Court at the sentencing hearing, [it] would undoubtedly [have] made a difference in the length of the sentence that was imposed." (*Id.*) The argument fails.

As counsel avers in his affidavit (D.E. 11-1 at PageID 45), the information about the Defendant's status as a sole-surviving parent of a young child was presented to the Court in paragraph 60 of the PSR. (*See* PSR at ¶ 60 (stating that the mother of Napper's daughter "died of pneumonia").) In addition, as counsel further points out, he "addressed this information in [his]

Position Paper" regarding the PSR. (D.E. 11-1 at PageID 45 (citing No. 13-cr-10008-JDB-1, D.E. 142 at PageID 371 ("His daughter is currently residing with a maternal aunt, as her mother has passed away. . . . When Mr. Napper is released from prison, he plans to live with his daughter at his mother's home.").) The Court reviewed the PSR and the parties' position papers prior to sentencing, and took the information in those documents into consideration in imposing the 135-month sentence.

Napper has offered no evidence or any reason to believe that, had counsel raised the point at the sentencing hearing, there is a reasonable probability that this Court would have imposed an even shorter sentence than the below-Guidelines sentence he received. He is therefore not entitled to relief on his assertion that counsel provided ineffective assistance with regard to his single-parent status.

Because all of Petitioner's claims of attorney ineffectiveness are without merit, they are DENIED.

III.     Pre-indictment Delay

As previously noted, Petitioner committed his drug offenses in the last two months of 2011 while he was out on bond in the Memphis case. The indictment for those offenses, however, was not filed until January 22, 2013. He now alleges that "[t]he Government failed to seek an indictment on a timely basis in order to enhance the sentence under U.S.S.G. § 4B1.1 by waiting for [Petitioner] to plead to the charge in the Memphis case and become final so that it could be used as a predicate offense for a career offender enhancement, thereby substantially increasing the offense level for sentencing purposes." (D.E. 1 at PageID 5.) Although the Government addresses

the claim as if it were a statute of limitations argument, the Court understands Petitioner to be alleging that his right to due process was violated by the fourteen-month pre-indictment delay. [4]

"[T]he statute of limitations does not fully define [a defendant's] rights with respect to the events occurring prior to indictment." *United States v. Marion*, 404 U.S. 307, 324 (1971). The right to due process also "has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). A pre-indictment delay violates due process "only when" it results in "substantial prejudice to [the defendant's] right to a fair trial and [is] an intentional device by the government to gain a tactical advantage." [5] *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982) (per curiam) (citing *Marion*, 404 U.S. at 325 and *Lovasco*, 431 U.S. at 783 (1977)).

Petitioner cannot prevail on his claim because his bald allegation that the Government caused the delay "in order to enhance the sentence under U.S.S.G. § 4B1.1" is belied by the record in his criminal case.[6] In his position paper and at the sentencing hearing, defense counsel argued that the Court should consider the pre-indictment delay as a factor under 18 U.S.C. § 3553(a),

---

[4] Petitioner's argument, which attempts to link the pre-indictment delay to his career offender status, is slightly different from the issue he raised on direct appeal. Respondent has not argued that the claim is procedurally defaulted for Napper's failure to raise it in his appeal. Because Petitioner is not on notice of the procedural default issue, the Court will not address it *sua sponte*. *Cf. Day v. McDonough*, 547 U.S. 198, 209–10 (2006) (authorizing district courts to raise statute of limitations affirmative defense *sua sponte* but requiring that parties be given notice and an opportunity to be heard).

[5] There is no question that the federal offenses were charged within the applicable limitations period, which is five years. *See* 18 U.S.C. § 3282.

[6] It is not clear whether Petitioner's conviction in the Memphis case was counted toward his career offender status. (*See* PSR at ¶ 43 (prior federal conviction not notated by asterisk as career offender predicate).) Nevertheless, the Court will assume it was.

14

supporting a downward departure from the low-end of the Guidelines range. (No. 13-cr-10008-JDB-1, D.E. 142 at PageID 369–70; *id.*, D.E. 156 at PageID 409–14.) In response, the Government called FBI agent Wes Mays to testify about the delay. (*Id.*, D.E. 156 at PageID 416–18.) The agent explained that the Government did not know that Napper was the individual implicated in certain recordings until it "conducted [a] proffer interview with" another individual. (*Id.*, D.E. 156 at PageID 418.) The agent testified that he did not know when that interview had occurred. After cross-examination of the witness, and statements by the prosecutor indicating that the interview was taken sometime after April 2012, the Court found that it was "unclear" as to when the Government knew the Defendant's identify. (*Id.*, D.E. 156 at PageID 433.) It concluded that the delay did not "necessarily reflect[] the [G]overnment's unwillingness or attempt to somehow adversely impact Mr. Napper by holding up the indictment in this case." (*Id.*, D.E. 156 at PageID 433.) Petitioner has not offered or identified any evidence to undermine this conclusion.

He also has not shown that the delay resulted in his classification as a career offender. As the PSR reflects, he was a career offender based on three convictions which pre-dated his 2011 federal offense conduct. (*See* PSR at ¶ 37 (1/14/2000); ¶ 41 (11/13/2001); ¶ 44 (6/23/11).) Thus, the fourteen-month delay between his offense conduct and the return of the federal indictment cannot be said to have caused him substantial prejudice.[7]

The claim is therefore DENIED.

For all of these reasons, the Amended Petition is DENIED.

---

[7] Indeed, as previously noted, Petitioner had already attained career offender status by the time of his earlier federal criminal case.

APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)–(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

16

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[8]

IT IS SO ORDERED this 7th day of February 2019.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[8] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.