IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JESSY NAPPER,

    Petitioner,

v.                                                                                           No. 1:16-cv-01023-JDB-jay

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING GOVERNMENT'S WAIVER MOTION

An evidentiary hearing on the sole remaining claim in this case is scheduled for August 13, 2021. Now before the Court is the Government's "Motion For An Order Finding Waiver of Attorney-Client Privilege As To Defendant's Former Counsel Barry McWhirter" (the "Waiver Motion"). (Docket Entry ("D.E.") 56.)[1] Respondent seeks to call McWhirter at the evidentiary hearing to testify as to his privileged conversations with Petitioner, Jessy Napper, during the course of Napper's 2009 criminal case, or to obtain McWhirter's affidavit regarding the same. For the following reasons, the motion is DENIED.

BACKGROUND

I.     Petitioner's Criminal Cases

In his 2009 criminal case, Napper pleaded guilty, pursuant to an agreement with the Government, to distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). (*United States v. Napper*, No. 2:09-cr-20123-SHM-cgc-5 (W.D. Tenn.), D.E. 573.) He was determined to be a career offender under § 4B1.1 of the advisory sentencing Guidelines based on two Tennessee drug convictions. In a position paper filed by defense counsel, Napper acknowledged that he qualified

---

[1] Record citations are to documents in the present case, unless otherwise indicated.

as a career offender. (*Id.*, D.E. 602 at PageID 1290.) Consistent with the parties' agreement, Judge Samuel H. Mays imposed a sentence of thirty-six months' incarceration and three years of supervised release. (*Id.*, D.E. 610.)

In 2011, while he was out on bond in the 2009 case, Petitioner committed additional federal drug offenses which resulted in the filing, in January 2013, of another federal indictment. (*United States v. Napper*, No. 1:13-cr-10008-JDB-1 (W.D. Tenn.), D.E. 2.) In the 2013 case, Napper was charged with one count of conspiracy to distribute cocaine and cocaine base and two counts of aiding and abetting possession of those drugs with intent to distribute. (*Id.*) He was represented by attorney Randolph Alden during plea negotiations. The Government offered a plea deal of six years' incarceration, which Petitioner rejected. The Defendant eventually entered an open guilty plea. (*Id.*, D.E. 259 at PageID 259.)

At sentencing, the Court determined that the Defendant qualified as a career offender subject to an advisory sentencing range of 151-188 months' incarceration. However, a downward variance of 16 months was applied to reflect the time Napper had already served in the 2009 case, resulting in a 135-month sentence. (*Id.*, D.E. 149 at PageID 382.) Three years of supervised release was also imposed. (*Id.*) The Defendant took an unsuccessful direct appeal.

II. § 2255 District Court Proceedings

Petitioner filed a timely § 2255 petition relating to his 2013 case, which set forth three claims for relief. In one of those claims, he asserted that counsel was ineffective by failing to advise him, prior to his rejection of the six-year plea offer, that he was subject to a much higher sentencing range as a career offender.[2]

---

[2] The two-part test for ineffective-assistance claims, as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to a petitioner's claim that counsel's errors caused him to reject the government's plea offer. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). With regard to

All claims were denied in the merits order entered on February 7, 2019. (D.E. 17.) With respect to the plea-offer claim, the order found that the record belied both Petitioner's allegation that counsel did not advise him of the consequences of rejecting the plea offer and his further allegation, offered to support his assertion of prejudice, that "had he received such advice, he would not have rejected the plea offer." (*Id.* at PageID 80.) The Court found, specifically, that an October 25, 2013, letter from counsel to Napper confirmed counsel's averment in his affidavit that he had advised Petitioner during the plea negotiations of the consequences of rejecting the plea offer. (*Id.*) The letter, which was sent to Petitioner after he rejected the plea offer, summarized the advice given by counsel during the plea negotiations, including his admonition to his client that he was subject to an enhanced sentence as a career offender, and that "[i]ndeed, you were a Career Offender in your previous federal case." (*Id.* (quoting D.E. 11-3 at PageID 51.))

III. Appeal

On appeal, the Sixth Circuit granted a certificate of appealability ("COA") on the plea-offer claim and denied a COA on each of the remaining claims. (D.E. 22.) On full briefing of the certified claim, Petitioner contended that the district court should have conducted an evidentiary hearing on the issue of whether counsel advised him that he was subject to sentencing as a career offender. (D.E. 24 at PageID 109.) In response, the Government argued "that counsel *did* advise Napper that he qualified for sentencing as a career offender, as evidenced by counsel's affidavit and [the] October 25, 2013, letter to Napper that reflected that he and Napper had discussed the

---

counsel's performance in that context, "[a] criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Thompson v. United States*, 728 F. App'x 527, 533 (6th Cir. 2018) (quoting *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003)). Prejudice is established where there is "a reasonable probability [the defendant] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Logan v. United States*, 910 F.3d 864, 869 (6th Cir. 2018) (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

3

career-offender issue 'a number of times' and that he advised Napper to accept the government's plea offer because the government had agreed to a sentence 'WELL BELOW the advisory guidelines.'" (*Id.* at PageID 110 (emphasis in original)). "The government also argue[d] that, even if counsel performed deficiently, Napper [could not] establish prejudice . . . because [he] already knew that he qualified as a career offender." (*Id.* at PageID 111.) Specifically, "Napper's presentence report in the 2009 case designated him as a career offender and . . . Napper, through counsel, acknowledged that he qualified as such." (*Id.*) This "knowledge," the Government argued, "mean[t] the district court was within its discretion to find Napper's allegations of ignorance inherently incredible or contradicted by the record." (*Id.*)

Addressing *Strickland*'s deficient-performance prong, the Sixth Circuit held that a factual dispute regarding the content of counsel's advice during plea negotiations was created by Petitioner's allegation in his verified Petition that counsel did not advise him of the consequences of rejecting the plea offer and counsel's contrary averment in his affidavit. (*Id.* at 110-11.) The court further found that counsel's after-the-fact letter, dated October 25, 2013, summarizing the attorney-client discussions during the plea negotiations, did not resolve the dispute. (*Id.*)

Regarding the prejudice prong, the Sixth Circuit held that, although the presentence report in the 2009 case designated Petitioner as a career offender and his attorney affirmed as much to the court in his position paper, those facts did not "foreclose[] the possibility that Napper was prejudiced nor prove[] Napper's allegations are unbelievable." (*Id.* at PageID 111.) The court reasoned that

> Napper may not have known about the consequences of being deemed a career offender because he did not receive a career-offender sentence in the 2009 case. Instead, the district court imposed the much lower 36-month sentence that the parties specified in their plea agreement (which made no mention of the career-offender guideline). It is thus not beyond belief that Napper was unaware of the severe sentencing consequences that could flow from his career-offender status.

4

(*Id.*). The court concluded that, "while Napper's claim may ultimately prove false at the evidentiary hearing, he has alleged enough to require the district court to hold one." (*Id.* (citations and internal quotation marks omitted).) The Sixth Circuit therefore vacated the judgment and remanded the case for an evidentiary hearing.

IV. Evidentiary Hearing and Waiver Motion

On remand, the Court appointed counsel to represent Petitioner. Counsel filed a supplemental brief in support of the sole remaining claim, reiterating Napper's allegation that attorney Alden never advised him during the plea negotiations that he was subject to an enhanced sentence as a career offender and that, had counsel so advised him, he would have accepted the plea agreement. The supplemental brief also argued that the great disparity between the six-year plea offer and the 151-188 month career offender sentencing range "alone establishes prima facie evidence of [Petitioner's] lack of personal knowledge concerning his potential sentencing exposure." (D.E. 42 at PageID 182.)

On April 19, 2021, Respondent filed its Waiver Motion.[3] The Government wants access to the communications between Petitioner and Barry McWhirter, who represented Napper in his 2009 criminal case, in order to rebut Petitioner's assertion that, at the time he rejected the plea offer in his 2013 case, he had no personal knowledge of his sentencing exposure as a career criminal. Respondent requests that the Court find that Napper impliedly waived the attorney-client

---

[3] Although not brought as a motion to compel, Respondent's request implicates the Court's broad discretion over the scope of discovery in this § 2255 proceeding. Discovery in § 2255 cases is controlled by Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, which states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."

privilege with regard to his communications with McWhirter by interjecting into the litigation the issue of his personal knowledge. The Government contends that it needs access to the privileged communications in order to mount a full defense against the ineffective-assistance claim. Specifically, Respondent asserts that the information is "highly relevant" to Petitioner's credibility and to the question of whether he can establish that he was prejudiced by counsel's alleged deficient performance. (D.E. 56 at PageID 198.) The Government posits that preservation of the privilege would be unfair because it would allow Petitioner to impermissibly use the privilege as both a "sword and a shield." (*Id.* at PageID 196.)

The Government also suggests that the Court should follow the lead of the district court in *United States v. Gaskin*, No. 2:11-CR-20178, 2018 WL 1150241, at *1 (E.D. Mich. Mar. 5, 2018). In that case, the § 2255 petitioner alleged that one of the attorneys who represented him in his underlying criminal case rendered ineffective assistance by failing to accurately advise him of his sentencing exposure, causing him to reject a favorable plea offer and proceed to trial. *Gaskin*, 2018 WL 1150241, at *1-2. The government moved for a finding of implied waiver by the petitioner regarding his conversations with other attorneys who represented him at different times in the same criminal case, including at the time he rejected an earlier plea offer. *Id.* Granting the motion, the court found that Petitioner impliedly waived the attorney-client privilege as to the attorneys whose conduct he was not challenging because they probably had evidence that would be relevant to questions implicated by the ineffective-assistance claim, specifically: "how Petitioner evaluated the benefits of pleading guilty, how much time he was willing to serve, and whether there was a threshold sentence that he would not agree to under any circumstances." *Id.* at *2. The court held that, "[t]o the extent Gaskin's communications with his attorneys [could]

6

shed light on" the issues implicated by his claim, he had "injected those communications into the litigation and consequently waived the attorney-client privilege." *Id.* at *1.

Petitioner maintains that he has not impliedly waived the privilege as to McWhirter. (D.E. 62 at PageID 206.) He argues that, "despite the Government's assertion that the privilege is waived to the extent it is necessary to litigate the Petitioner's ineffective assistance of counsel claim[], the waiver the Government is requesting involves separate counsel, not subject to the ineffective assistance claim here at bar." (*Id.*)

DISCUSSION

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege may be "waived by voluntary disclosure of private communications by an individual or corporation to third parties." *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir. 1999). A party may also "waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure." *Id.* "Implied waivers are consistently construed narrowly." *In re Lott,* 424 F.3d 446, 453 (6th Cir. 2005).

In its seminal decision in *Lott*, 424 F3d at 446, the Sixth Circuit addressed whether the habeas petitioner in that case impliedly waived the attorney-client privilege as to his communications with his criminal defense lawyer by asserting a claim that he was actually innocent of murder. *Lott*, 424 F.3d at 454. The government sought an order from the court to compel "trial counsel [to] provide any relevant information he ha[d] concerning whether Lott [was]

7

guilty of the murder and whether Lott confessed the murder to the police." *Id.* at 448. Granting the state's motion, the district court held that the petitioner had impliedly waived the attorney-client privilege by asserting his actual innocence. *Id.* The prisoner sought a writ of mandamus from the Sixth Circuit. *Id.*

Addressing the scope of the implied-waiver doctrine, the Sixth Circuit noted that "[t]he implied waiver in habeas proceedings has typically been the result of a petitioner's assertion of his own counsel's ineffectiveness."[4] *Id.* at 453 (citing *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001)). The court held, nevertheless, that the doctrine is not limited to those circumstances, but also extends to cases where the privilege holder has otherwise "taken some affirmative step to place the content of the confidential communication into the litigation." *Lott*, at 455. The court quoted with approval a commentator's summary of the doctrine:

> The privilege is held to be waived when a client attacks the quality of his attorney's advice through, for example, a civil defendant's pleading of an advice-of-counsel defense or a criminal defendant's appeal on grounds of inadequate legal representation. The doctrine is also invoked to waive a personal injury plaintiff's physician-patient privilege and to waive the psychiatrist-patient privilege of a criminal defendant pleading an insanity defense. *These allegations have one thing in common: the pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail.*

!
*Id.* at 453 (emphasis added) (quoting *Developments in the Law–Privileged Communications, Implied Waiver*, 98 Harv. L. Rev. 1629, 1638 (1985)).

The *Lott* court suggested that fairness considerations are to play at least some role in a court's assessment of whether to abrogate the attorney-client privilege. Firstly, "[c]ourts 'must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.'" *Id.*

---

[4] Before addressing the merits of the mandamus petition, the Sixth Circuit determined that the petitioner could bring an interlocutory challenge to the lower court's ruling through a mandamus proceeding. *Lott*, 424 F.3d at 448-52.

at 453 (quoting *Bittaker v. Woodford,* 331 F.3d 715, 720 (9th Cir. 2003). In addition, a court should not allow a party to use the privilege as both "a shield and a sword." *Id.* at 454 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). The shield/sword "image is meant to convey that 'the privilege may implicitly be waived when [the privilege holder] asserts a claim that in fairness requires examination of protected communications.'" *Ross v. City of Memphis*, 423 F.3d 596, 604-605 (6th Cir. 2005) (quoting *Bilzerian,* 926 F.2d at 1292). As long as "the sword stays sheathed," however, "the privilege stands." *Lott*, 424 F.3d at 454.

Turning to the facts before it, the Sixth Circuit acknowledged that "[i]f Lott made statements to his attorney concerning his guilt or innocence, those statement are unquestionably relevant to the determination of whether or not he is innocent." *Id.* at 455. The court nevertheless held that the privilege which protected those communications was not to be pierced because Lott did not challenge his attorney's performance and his assertion of actual innocence was not "an affirmative step" that interjected the privileged communications into the litigation. *Id.* at 455. The Sixth Circuit rejected as too "broad" the lower court's assumption that "[a] habeas court may imply a waiver of the privilege to the extent necessary for the State to defend the claims a habeas petitioner raises." *Id.* at 454.

In his dissenting opinion, then-Chief Judge Boggs posited that the majority gave too scant attention to fairness concerns. *Id.* at 456-64 (Boggs, C.J., dissenting). He suggested that "the privilege may implicitly be waived when [the privilege holder] asserts a claim that in fairness requires examination of protected communications." *Id.* at 457 (quoting *Bilzerian,* 926 F.2d at 1292). He concluded that fairness to the respondent required discovery of Lott's conversations with his defense attorney because those communications were highly relevant to his actual innocence claim and critical to the defense:

9

> Doing fairness to the state in an actual-innocence context may require that a petitioner impliedly waives his privilege. In this case, the parties are reexamining a crime where the only witness to the crime, other than the perpetrator, passed away almost twenty years ago. Finding witnesses and any remaining relevant evidence concerning this crime will be difficult.

*Id.* at 460.

In the present matter, the Court finds it to be a close question as to whether Napper's mere assertion of an ineffective-assistance claim, which implicates what he knew about his career-offender status and its import, should be regarded as an affirmative step that renders the privilege impliedly waived as to his communications with his attorney from a different criminal case. On the one hand, Petitioner's claim places his personal knowledge of his sentencing exposure before the Court. On the other hand, the inmate does not challenge McWhirter's conduct and he does not rely on his communications with McWhirter to support his claim. *See Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 469-70 (E.D. Mich. 2008) (applying *Lott*'s precepts and finding implied waiver where defendant took the affirmative step of "cho[osing] to inject the advice of its counsel into th[e] litigation" by averring, "as factual support for [its good faith] defense," that it consulted with counsel). It also does not appear that Petitioner "will be forced" to rely on his communications with McWhirter "in order to prevail." *Lott*, 424 F.3d at 453 (citation and quotation marks omitted). *See Stonerock v. Teays Valley Loc. Sch. Dist.*, No. 2:07-CV-1027, 2009 WL 10678856, at *5 (S.D. Ohio Jan. 15, 2009) (finding no implied waiver in part because "[t]here [was] no evidence . . . before the Court that 'the party holding the privilege,' *i.e.*, defendants, 'will be forced to draw upon the privileged material at trial in order to prevail.'") (quoting *Lott*, 424 F.3d at 453).

What is more, the Court considers *Gaskin* to be of limited guidance. In finding implied waiver, the court in that case seemed to rely heavily, if not exclusively, on the relevance of the

10

protected communications to the issues raised by the petitioner's claim. *See Gaskin*, 2018 WL 1150241, at *1 (finding implied waiver to "the extent Gaskin's communications with his attorneys shed light on . . . questions" raised by the ineffective-assistance claim) As discussed above, the Sixth Circuit in *Lott* rejected the idea that relevance should be the primary determinant of whether an implied waiver has occurred. *See Lott*, 424 F.3d at 455; *see also Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. (UAW) v. Honeywell Int'l Inc.*, 300 F.R.D. 323, 327–28 (E.D. Mich. 2014) (citing *Lott*, 424 F.3d at 452) ("[R]elevance alone is insufficient to outweigh the privilege Honeywell possesses over [the privileged communications], as the Sixth Circuit has solidly held that despite its potential relevance, privileged matter is not discoverable absent waiver, and implied waiver is to be narrowly construed.").

But even if the Court were to hold, as Respondent argues, that Petitioner has taken an affirmative step to place his protected communications before the Court, it does not appear that a decision to keep Napper's privilege intact would significantly impair the Government's ability to mount a defense to the ineffective-assistance claim. More to the point, to the extent Respondent posits that it would be unfair to allow the privilege to stand, and insofar as *Lott* contemplates some role, even if not clearly defined, for a court's consideration of fairness, preserving the privilege in the present case would not place the Government at a great disadvantage. Unlike the state in *Lott*, which faced difficulties in "[f]inding witnesses and any remaining relevant evidence" to counter the petitioner's claim, *Lott*, 424 F.3d at 460 (Boggs, J., dissenting), Respondent has at its disposal other evidence relevant to Napper's knowledge of his sentencing exposure.[5] Alden's expected testimony, as forecast in his affidavit and attached exhibits, is that he told Petitioner about his

---

[5] The Court makes no determination at this time as to the weight to be given any evidence that may be favorable to either party.

11

career-offender status and its consequences "a number of times." (D.E. 11-3 at PageID 48.) There are also non-privileged record documents from the 2009 criminal case, such as the sentencing transcript, that appear to reveal that Petitioner knew of his career-offender status and its potential consequences only months before his indictment in the 2013 case.[6] The record as currently developed therefore favors preservation of the privilege. The motion is DENIED.

IT IS SO ORDERED this 22nd day of June 2021.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[6] The sentencing hearing transcript was lodged on the docket in the 2009 case after the Sixth Circuit's remand in the present matter. (*See* No. 2:09-cr-20123-SHM-cgc, D.E. 734.) Because Petitioner was present at the hearing, the transcript may be relevant to the question of whether he personally knew at that time that he was a career-offender and the possible consequences of that designation. (*See e.g.*, *id.*, D.E. 734 at PageID 1760 ("COURT: Now there's a three-level reduction for acceptance. That means we are at a Total Offense Level 29, Criminal History Category 6. We're in the 2011 guideline manual, 151 to 188 months. Six -- let's see. It's talking about the career offender -- 151 to 188 months."); PageID 1787 ("COURT: "Now, Mr. Napper, get it together. You've got an opportunity here that you wouldn't have in most situations. Ordinarily I -- first, I respect the guidelines a lot. Not everybody does, but I do. Your guideline range is up to 188 months in prison. Your statute range is up to 20 years in prison. You're getting a three-year prison sentence. I consider that a very serious sentence. If you have to serve it, I'm sure you consider it a very serious sentence. But it's a lot less than you could have gotten in this case. THE DEFENDANT: Yes, sir.").)